**In re MULBERRY CORPORATION, Wingate Land Corporation, Mulberry Phosphates, Inc., Nu–Gulf Industries, Inc., Piney Point Phosphates, Inc., Debtors.**

Nos. 01–2002–8P1 to 01–2006–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 3, 2001.

Don M. Stichter, Stichter, Riedel, Blain & Prosser, Tampa, FL, for debtors.

Robert B. Glenn, Tampa, FL, David Rosinus, New York City, for Credit Agricole Indosuez.

Ernest J. Marquardt, Tampa, FL, David W. Wirt, Winston & Strawn, Chicago, IL, for Monsanto Enviro–Chem Systems, Inc.

Robert A. Soriano, Tampa, FL, for The CIT Group and TransAmerica.

William Knight Zewadski, Tampa, FL, for Official Creditors Committee.

Frank E. Brown, Tampa, FL, Robert E. Winter, O'Melveny & Myers, Washington, DC, for The Fairchild Corp.

John A. Anthony, Shackelford, Farrior, et al., Tampa, FL, for Gray, Harris, Robinson, et al.

**ORDER ON MOTION FOR AUTHORITY TO TRANSFER REAL PROPERTY FREE AND CLEAR OF LIENS AND FOR USE OF SALE PROCEEDS TO FUND OPERATIONS (DOC. NO. 220A)**

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in these yet to be confirmed Chapter 11 cases of

four entities whose cases have been procedurally but not substantively consolidated, is a Motion filed by Piney Point Phosphate, one of the Debtors, to sell an easement on its real estate holdings free and clear of all liens and encumbrances. The Motion is filed pursuant to Section 363(f)(2) and is based on the contention that the entities holding liens on the property consented to the proposed sale. However, the Motion is not limited to the authority to sell, but also includes a request to authorize the use of the proceeds of the sale to pay certain costs of administration, including 25 percent of the sales price to compensate principals of these entities.

The proposed sale involves an easement to be sold to Gulfstream Pipelines, L.L.C. (Gulfstream) for $280,000.00 in order to permit Gulfstream to construct a natural gas pipeline on the property. The easement will consist of a 50 foot wide strip on 4.57 acres. The property is currently encumbered in favor of the following entities: Credit Agricole–Suez (Credit Agricole) the holder of the first mortgage in the approximate amount of $35 million; Monsanto Enviro–Chem Systems (Monsanto) for a construction lien in the approximate amount of $30 million; and CIT Group (CIT) in the approximate amount of $6.8 million. The total amount encumbering the land in question is, of course, far in excess of the sales price that the Debtors are supposed to receive if the sale is approved.

The proposed sale is objected to by Credit Agricole and Monsanto, but is supported by CIT and the Official Committee of Unsecured Creditors.

■ In support of the Motion, counsel for the Debtor concedes, as it must, that there is no unanimous consent and that the proposed sale is challenged by Credit Agricole, the holder of the first mortgage on the subject property. Therefore, the Motion as presented cannot be granted. However, notwithstanding lack of consent, counsel for the Debtors contends it should be granted and the sale approved because it meets the requirements of Section 363(f)(5) for sale free and clear of liens. This subclause of 363(f) permits a sale free and clear of liens if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

In support of this proposition, counsel for the Debtors contends that the prospective purchaser, Gulfstream, has the power of condemnation by virtue of 15 U.S.C. § 717(f) for the purpose of acquiring easements for laying pipelines. According to the Debtors this eminent domain power granted to such entities as Gulfstream is sufficient to satisfy the requirements of Section 363(f)(5), which authorizes the sale of property free and clear of liens if under the applicable non-bankruptcy law a secured party could be compelled to accept money in satisfaction of their interest.

■ Concerning the request to use the proceeds of the sale if the sale is approved, all of which are intended to be used for payment of costs of administration, fees of insiders, professionals and the like, it is contended that their labor is absolutely essential to enable the Debtors to assist prospective purchasers in due diligence concerning the sale of the entire conglomerate, which is the only basis for salvation and reorganization of these entities under Chapter 11. In the alternative, it is contended that in any event, pursuant to Section 506(c), the secured parties would be surcharged therefore, the proposed use of the sale proceeds is justified.

Ordinarily the initial determination on Piney Point's request to sell would be dispositive of the other two requests if the

Motion is denied. However for the sake of the complete treatment of the matters presented, this Court will consider the other two propositions urged even though this Court is satisfied that the Motion to Sell Free and Clear as presented for this Court's consideration cannot be granted for the simple reason that it is based on consent and, as noted, there is no unanimous consent. Even assuming without conceding that because of the objections raised by Credit Agricole might permit this Court to consider the alternatives urged, which is not pled, and approve the sale under Section 363(f)(5). The Court will also consider the request for use of the proceeds of the sale and the alternative request to surcharge the secured creditors.

■ Considering this last proposition first, it is clear that there is no basis whatsoever to authorize a surcharge to secured creditors. It defies credulity to accept the proposition that this proposed sale is for the purpose of "preserving or disposing of the encumbered property to the benefit of the holders of the secured claims" who will not receive anything from the sale if the sale is approved.

Considering next the use of the proceeds of this proposed sale, it should be noted at the outset that even if there was a sale, the proceeds of it would be cash collateral. Under Section 362(a) the Debtor is not authorized to use cash collateral unless it offers adequate protection to the parties whose cash collateral is being used consented. Obviously the first two subclauses of Section 361 are not applicable because the Debtor is not in a position to make periodic payments, or offer additional liens or a substitute lien on the subject property.

That leaves for consideration the last method of furnishing adequate protection which is to give the secured parties the indubitable equivalent of their interest.

This indubitable interest is supposed to be the alleged oversecured position of Agricole Credit for which there is no competent proof in this record. And it certainly cannot be gainsaid that Monsanto Chemical or CIT are oversecured.

In the last analysis the entire argument presented in support of the Motion is based on nothing but on the very novel "doctrine of desperation" so eloquently explained by counsel for CIT, the junior mortgagee. The argument of all parties supporting the Motion was based on the Machiavellian principle that the end justifies the means because this proposed sale is a major, if not the only, approach which might bring solution to an apparently hopeless state of affairs. Unfortunately, neither of these doctrines permit to ignore the stark realities which appear from the record and the Motion as filed.

Therefore, this Court is satisfied that the proposed sale does not meet the requirements of Section 363(f)(5) and therefore the sale cannot be approved as presented. The two alternative requests are also without merit.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Authority to Transfer Real Property Free and Clear of Liens and for Use of Sale Proceeds to Fund Operations be, and the same is hereby, denied.